IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ALICIA HODGE, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) ) |
| PARAGON BANK, WILSON AND ASSOCIATES, P.L.L.C., SHERIFF FLOYD BONNER, JR., in his official and personal capacity, WELLS FARGO BANK N.A., SELENE FINANCE LP, AND JANE DOE AND JOHN DOE 1–20, | ) ) ) ) ) ) ) ) |
|     Defendants. | ) ) |

No. 2:25-cv-02318-SHL-cgc

**ORDER DENYING EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER INJUNCTION EX PARTE**

Before the Court is pro se Plaintiff Alicia Hodge's Emergency Motion for a Temporary Restraining Order Injunction Ex Parte, filed March 20, 2025. (ECF No. 3.) The same day, Hodge filed her complaint, in which she alleged eight causes of action against Defendants Paragon Bank, Wilson and Associates, P.L.L.C., Sheriff Floyd Bonner, in his official and personal capacity, Wells Fargo Bank, N.A., Selene Finance LP, and Jane Doe and John Doe 1–20. (ECF No. 2.)[1] In the Motion, Hodge seeks "to stay the unlawful Sheriff sale for the property Located at 830 Cold Creek Dr. Collierville, TN 38017" (the "Property") pursuant to Federal Rule of Civil Procedure 65(b). (ECF No. 3 at PageID 34.) For the reasons described below, the Motion is **DENIED**.

---

[1] The counts are (1) violation of 42 U.S.C. § 1983; (2) Violation of 42 U.S.C. §§ 1983 & 1985(3): conspiracy; (3) Violation of 42 U.S.C. § 1983: refusing or neglecting to prevent; (4) Malicious abuse of process; (5) Title 18 U.S.C. Section 241 and 242 conspiracy; (6) Intentional infliction of emotional distress; (7) Mail Fraud; and (8) Fraud. (Id. at PageID 7.)

**BACKGROUND**

According to the Complaint, Hodge lives in the Property, and signed a promissory note for it on August 26, 2019, and the closing disclosure documents the next day. (ECF No. 2 at PageID 3.) Hodge asserts that the promissory note states that the monthly principal and interest due was $1,557.37. (Id.) She alleges that on or about October 17, 2024, she received correspondence from Defendant Selene Finance LP ("Selene") that included several mortgage statements indicating that seven payments were due from August 1, 2024 through February 1, 2025. (Id.) Hodge asserts that she previously received correspondence from Defendant Wells Fargo indicating a forbearance that resulted in her monthly payments being $1,277.17, and payable from September 1, 2023, through September 1, 2063. (Id. at PageID 4, 30.) That document, described as a Loan Modification Agreement, indicates it was made on September 6, 2023. (Id. at PageID 30.) Hodge asserts she received separate correspondence from Selene indicating the monthly payments due were $1,897.73. (Id. at PageID 4, 31.) That document, titled Mortgage Statement and dated January 8, 2024, indicates that a payment of $7,684.78 was due on February 1, 2024, and contains a warning that a "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home." (Id. at PageID 31.)

Hodge asserts that, "[o]n or about January 6, 2025, attorneys were hired by Wells Fargo and/or Selene Finance LP to sell the property on Friday, the 21st day of March 2025." (Id. at PageID 4.) A letter to Hodge from Wilson & Associates, P.L.L.C., dated February 4, 2025, indicates that "the property commonly known as 830 Cold Creek Drive, Collierville TN 38017 is scheduled to be sold at a foreclosure sale. PLEASE BE ADVISED THAT THE PREVIOIUS FORECLOSURE SALE OF THE ABOVE PROPERTY HAS BEEN RESCHEDULED AND WILL TAKE PLACE ON March 21, 2025, AT OR ABOUT 11:00 AM, at the Southwest Adams

Avenue Entrance of the Shelby County Courthouse 140 Adams Avenue, Memphis, TN 38103." (Id. at PageID 32.)

Although Hodge's complaint is not entirely clear, she appears to be asserting that Wells Fargo and Selene conspired to create a financial hardship for her and that, "[f]rom the looks of things, it all appears to be a Ponzi scheme or high-tech fraud and manipulation." (Id. at PageID 4.) Her Motion seeks the extraordinary relief of a temporary restraining order that would prevent the foreclosure sale of the Property.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders. The Rule provides that preliminary injunctions may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). At the same time, "[t]he only type of injunctive relief that a district court may issue ex parte [without notice] is a temporary restraining order." Hancox v. Citimortgage, Citifinancial, Cmty. Mortg., No. 13-2629-STA-dkv , 2013 WL 12049113, at *1 (W.D. Tenn. Aug. 15, 2013) (quoting First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 650 (6th Cir. 1993)). Courts may issue TROs without written or oral notice to the adverse party or its attorney only if two conditions are met. Fed. R. Civ. P. 65(b)(1). First, "specific facts in an affidavit or a verified complaint [must] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). "The normal circumstance for which the district court would be justified in proceeding ex parte is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found." First Tech. Safety, 11 F.3d at 650 (citation omitted).

## ANALYSIS

Here, Hodge does not allege that she has provided notice to any Defendant that would warrant the entry of a preliminary injunction. And, although she filed a verified complaint, the complaint does not otherwise satisfy either of the requirements under Fed. R. Civ. P. 65(b)(1)— i.e., explaining what efforts she made to give notice and demonstrating immediate and irreparable injury— that would justify issuing a temporary restraining order without written or oral notice to the adverse parties or their attorneys.

As a threshold matter, Hodge has not suggested, let alone certified in writing, that she made any efforts to give notice to Defendants or the reasons why she should not be required to do so. Although courts liberally construe pro se complaints, the "duty to be less stringent . . . does not require [a] court to conjure up unplead allegations." Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989). Hodge does not assert either in her Motion or her contemporaneously filed complaint that she has made any efforts to give notice to the Defendants that she is seeking a temporary restraining order. And, based on the allegations in the complaint and the documents attached thereto, Hodge had ample opportunity to provide Defendants notice. She alleges that either or both of Wells Fargo and Selene hired attorneys to sell the Property on January 6, 2025, and the letter from Wilson & Associates that notified her of the March 21 sale was dated February 4, 2025. Yet, Hodge did not file her complaint until 4:09 p.m. on the literal eve of the foreclosure sale, and she filed her Motion two minutes after that. Ultimately, Hodge's failure to meet Rule 65's notice requirements is fatal to her request to be granted the extraordinary relief she seeks.

Yet, even if Hodge had explained her efforts to give notice to Defendants or the reasons why she should not be required to do so, she would still not be entitled to the relief she seeks, as

4

she has failed to meet Rule 65(b)(1)'s second requirement of clearly showing that she would suffer an immediate and irreparable injury, loss, or damage before the adverse parties could be heard. "When courts consider irreparable harm, 'the key word is irreparable' and 'the possibility that adequate compensatory or other corrective relief will be available at a later date weighs heavily against the claim.'" Ward v. Coleman-Ward, No. 1:19-CV-1119-STA-jay, 2019 WL 5212901, at *4 (W.D. Tenn. Oct. 16, 2019) (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974) (cleaned up)). The court identified multiple ways in which the foreclosure of farm property in Ward did not represent irreparable harm, including that the plaintiff could recover money damages if she prevailed on her claims and that, under Tennessee law, there remained "at least the theoretical possibility that Plaintiff could also redeem the property within two years of the foreclosure sale." Id. (citing Tenn. Code Ann. § 66-8-101 for the proposition that "[r]eal estate sold for debt shall be redeemable at any time within two (2) years after such sale: . . . [w]here it is sold under a deed of trust or mortgage without a judicial sentence, unless [exceptions apply]"). Accordingly, Hodge has not shown that she would suffer the sort of immediate and irreparable injury, loss, or damage that would warrant issuing a TRO without notice to the Defendants.

In addition to the procedural shortcomings in Hodge's Motion, it also fails on the merits. "The Court considers four factors when determining whether to grant a temporary restraining order: (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of [a TRO] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of [a TRO]." Thomas v. Schroer, 116 F. Supp. 3d 869, 874 (W.D. Tenn. 2015) (citation and internal quotations omitted). All the factors must be balanced, as no single factor is dispositive. Id. (citing In re De Lorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985)). Still, while "[n]o

5

single factor is determinative . . . "a finding that there is simply no likelihood of success on the merits is usually fatal." Hancox , 2013 WL 12049113, at *2 (quoting Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008)). "The burden of persuasion is on the party seeking the injunctive relief." Id. (citing Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978)).

As explained above, Hodge cannot demonstrate that she would suffer irreparable injury, but, even more fundamentally, she has not shown a strong likelihood of success on the merits. Hodge's complaint asserts that she received multiple notices from Defendants directing her to pay the mortgage, and at least one notice informed her that a failure to do so may "result in fees and foreclosure – the loss of your home." (ECF No. 2 at PageID 31.)  Yet, Hodge does not assert anywhere in the record that she actually made any payments to any Defendant.  Hodge's apparent failure to pay the mortgage strongly suggests that her efforts at forestalling foreclosure would be legally meritless.  Similarly, issuing the TRO would cause substantial harm to at least some of the Defendants, who are seeking to enforce their contractual rights, and the public interest would not be served by a court order that would impede the enforcement of the terms of that contract.  Ultimately, each of the factors weighs against the issuance of a TRO.  Of course, this conclusion is limited to the analysis of Hodge's entitlement to a TRO, and is not a conclusion as to her entitlement to relief for the allegations asserted in her complaint.

For the foregoing reasons, Hodge's Emergency Motion for a Temporary Restraining Order Injunction Ex Parte is **DENIED**.

**IT IS SO ORDERED,** this 21st day of March, 2025.

                                         s/ Sheryl H. Lipman
                                         SHERYL H. LIPMAN
                                         CHIEF UNITED STATES DISTRICT JUDGE